IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.B. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE NO.: |
| | : | |
| v. | : | **1:23-cv-0970-VMC** |
| | : | |
| RAMKABIR INVESTMENT GROUPS, INC. | : | |
| d/b/a Travelodge by Wyndham | : | |
| | : | |
| Defendant. | : | |

## SECOND AMENDED COMPLAINT

Matthew B. Stoddard
M. Janine Bell
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
janine@legalhelpga.com

**Attorneys for Plaintiff**

1

**TABLE OF CONTENTS**

Introduction ...................................................................................................3

Procedural Issues ...........................................................................................3

D.B. Is Trafficked For Sex At The Hotel ......................................................4

COUNT 1:    TVPRA Claims........................................................................11

COUNT 2:    State Law RICO Claims .........................................................17

COUNT 3:    Premies Claim ........................................................................20

COUNT 4:    Private Nuisance Claim ..........................................................23

Proximate Cause And Damages ...................................................................26

Prayer For Relief .........................................................................................29

## INTRODUCTION

1.      From approximately March 12, 2020 until present, a Travelodge by Wyndham hotel located at 2471 Old National Highway, College Park, Fulton County, GA (the "hotel") was owned and operated by Defendant Ramkabir Investment Groups, Inc. ("Ramkabir").

2.      From approximately August 1, 2020 until approximately April 8, 2021 D.B. was repeatedly trafficked for sex at the hotel by Ashanti Cole ("Cole").

## PROCEDURAL ISSUES

3.      Plaintiff D.B. is a resident and citizen of Macon, Georgia who consents to the jurisdiction of this Court.

4.      Given the nature of the case, D.B. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed D.B.'s full name to defense counsel or will immediately upon identification of defense counsel.  When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for D.B. to proceed anonymously.  Upon information and belief, Defendant(s) will consent to D.B. proceeding without publicly disclosing her names.

5.      Defendant Ramkabir can be served through its registered agent Vipulbhai Bhagat at 136 Shelton Drive, McDonough GA 30252.

6.     Defendant Ramkabir was properly served with process in this matter.

7.     Defendant Ramkabir is subject to the jurisdiction and venue of this Court.

8.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

9.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in College Park, Fulton County, Georgia which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

### D.B. IS TRAFFICKED FOR SEX AT THE HOTEL

10.     In June of 2020, D.B. was a fifteen-year-old minor living with her mother who began chatting online with Cole.

11.     After several online Instagram interactions, D.B. agreed to meet Cole in person.

12.     Cole sent an Uber to retrieve D.B. and bring her back to Cole's home.

13.     At Cole's home, Cole told D.B. she would be his girlfriend.

14.     After a few months of living with Cole, Cole beat D.B. and told her she would be selling her body for sex, that Cole would be keeping the money, and that if D.B. did not agree there would be continued beatings and additional violence.

15.     Cole took D.B. to the hotel and again told her that she would be required to have sex with men in exchange for money, and that the money would go to Cole.

16.     Between approximately August of 2020 and approximately April of 2021, D.B. spent weeks at a time at the hotel being sold for sex by Cole.

17.     Cole threatened violence on D.B. if D.B. did not continue to perform sex work at the hotel.

18.     Cole would often choke and slap D.B.

19.     Cole carried a gun and would threaten D.B. with the gun.

20.     Cole hit D.B. in the ear causing significant lifelong hearing impairment out of this ear.

21.     Cole raped D.B. at the hotel.

22.     D.B. was sexually assaulted hundreds of times while at the hotel by various "Johns."

23.     Cole took the commercial sex act proceeds.

24.     For the duration of the stays, Cole used a portion of the proceeds from the commercial sex acts to book lodging at the hotel for the next night.

25. Upon information and belief, Cole would use Defendant(s)' WIFI network to post advertisements for D.B. to perform sex acts, and men would thereafter rape D.B. because of these advertisements. Upon information and belief, Cole paid for use of Defendant(s) WIFI network either through the room rental fees or a separate charge.

26. Cole would not let the cleaning staff clean the rooms where D.B. was performing commercial sex acts. Instead, either Cole or D.B. (at Cole's direction) would ask Defendant(s)' cleaning staff for towels and sheets. These requests for towels and sheets were made multiple times each day, and Defendant(s)' staff always complied.

27. Throughout the period, Cole would approach the Travelodge front desk where he would have frequent long casual and friendly conversations with a heavy-set black female that was employed by Defendant. These conversations would include providing Cole with a hotel room but would be much much longer than necessary to rent a hotel room. D.B. could tell that Cole and Defendants' employee were smiling and talking for long periods about a variety of topics. When Cole would approach the Travelodge desk to speak with Defendant's employee, the situation was as such:

a.  Cole would order D.B. to stand back many feet away from Cole so that D.B. could not hear the conversations but such that Defendant's employee could still see D.B.

b.  Defendant's employee could observe that D.B. was very young (appx 16 years old) and that Cole was much older (appx 26 years old) but not old enough to be D.B.'s father

c.  Defendant's employee could recognize that D.B. was the appropriate age to be in school (16 years old)

d.  Defendant's employee could recognize that D.B. was not attending school because she was constantly at the hotel all hours of the day and for a prolonged period

e.  Defendant's employee could observe that D.B. had been previously beaten including being able to observe a large knot on D.B.'s head on one occasion

f.  Defendant's employee could see that D.B. was not dressed appropriately for a 16-year-old-girl and was wearing very little clothing

g.  Defendant's employee could see that D.B. was often looking down and acting meekly

h.  Defendant's employee could see that D.B. was sometimes on drugs, and

i.  Defendant's employee could see that D.B. had poor hygiene and was fatigued and sleep deprived and was being monitored by Cole.

28.  To access rooms in this hotel, you would walk down an outdoor balcony and enter your room.  While on the balcony, you would be seen from the

parking lot.  You could access your hotel room by going straight from the parking lot to the balcony and to your room without going through the lobby.

29.    Throughout the period, Defendant's security officer employee who drove a white vehicle (believed to be a Dodge or Chrysler) would frequently sit in his vehicle in the parking lot and observe the comings and goings of Cole, D.B. and various johns – over a period of months – as follows:

a.    Cole and D.B. would be walking together through the parking lot and to the hotel rooms that Cole rented.

b.    Defendant's security officer could observe that D.B. was very young (appx 16 years old) and that Cole was much older (appx 26 years old) but not old enough to be D.B.'s father

c.    Defendant's security officer could recognize that D.B. was the appropriate age to be in school (16 years old)

d.    Defendant's security officer could recognize that D.B. was not attending school because she was constantly at the hotel all hours of the day and for a prolonged period

e.    Defendant's security officer could observe that D.B. had been previously beaten including being able to observe a large knot on D.B.'s head on one occasion

f.    Defendant's security officer could see that D.B. was not dressed appropriately for a 16-year-old-girl and was wearing very little clothing

g.    Defendant's security could see that D.B. was often looking down and acting meekly

h.  Defendant's security could see that D.B. was sometimes on drugs,

i.  Defendant's security could see that D.B. had poor hygiene and was fatigued and sleep deprived and was being monitored by Cole,

j.  Defendant's security saw that D.B. (16 at the time) was standing in the doorway to the hotel room each day letting between 10 and 15 johns enter – one at a time – stay for 15 minutes or so and then leave.  With these quick meetings occurring at any hour – day time or nighttime,

k.  Defendant's security saw that Cole would leave the room when a John entered and stand on the balcony near the room front door and monitor the room for the length of the time that the John was inside the room and then Cole would return to the room when the door opened and then the John would leave shortly thereafter, and

k.  D.B. noticed that the Defendant's security saw all of these things.

30.  While Cole would not generally seek to prevent Defendant's cleaning staff employee enter the rooms he rented from Defendant, there were some occasions that cleaning staff entered the rooms during Cole's rentals and the staff would always enter the room right after Cole's rental ended.

31.  When Defendant's employee cleaning staff would enter the rooms that Cole rented and in which D.B. was repeatedly raped, Defendant's cleaning staff would observe:

a.  a highly messy and disorganized room

b.    drug paraphernalia

c.    trash cans full of tobacco shaving from which large cigars had the interior tobacco removed to make blunts

d.    a large and significant number of condoms and condom wrappers in the room – much larger number than any one couple could possibly be using, and

e.    a much larger quantity of towels and sheets than one couple could use with most of the towels and sheets stained with bodily fluid.

32.    Defendant's hotel had a significant number of cameras that videotaped the common areas of the hotel including the balcony areas and the parking lots. These video camera feeds were available for viewing and were viewed by Defendant's front desk lobby employee.

33.    Through looking at the video cameras, Defendant's front desk employees observed:

a.    Cole and D.B. walking together through the parking lot and to the hotel rooms that Cole rented.

b.    D.B. was very young (appx 16 years old) and that Cole was much older (appx 26 years old) but not old enough to be D.B.'s father

c.    D.B. was the appropriate age to be in school (16 years old)

d.    D.B. was not attending school because she was constantly at the hotel all hours of the day and for a prolonged period

e.    D.B. had been previously beaten including being able to observe a large knot on D.B.'s head on one occasion

10

    f.     D.B. was not dressed appropriately for a 16-year-old-girl and was wearing very little clothing

    g.     D.B. was often looking down and acting meekly

    h.     D.B. was sometimes on drugs,

    i.     D.B. had poor hygiene and was fatigued and sleep deprived and was being monitored by Cole,

    j.     D.B. (16 at the time) standing just past the doorway to the hotel room (in the balcony) each day letting between 10 and 15 johns enter – one at a time – stay for 15 minutes or so and then leave. With these quick meetings occurring at any hour – daytime or nighttime,

    k.     Cole standing on the balcony near the room front door and monitoring the room for the length of the time that the John was inside the room and then Cole returning to the room when the door opened and then the John leaving shortly thereafter.

34.    Armed with all of the knowledge stated herein, Defendant continued to take money from Cole and exchange aid Cole by providing him with hotel rooms and a WIFI network.

## COUNT 1: TVPRA CLAIMS

35.    Defendant(s) "knowingly benefited" from D.B.'s trafficking because:

    a.     Cole rented rooms at the hotel;

    b.     Cole used the hotel WIFI network;

    c.     Defendant(s) collected revenue from the room rentals and the use of the WIFI network; and

> d.  D.B. was advertised for sex through the WIFI network and forced to have sex in the rooms.

36.  Defendant(s) took part in a common undertaking involving risk or profit with the trafficker(s) because:

> a.  Plaintiff's trafficker(s) would pay in cash for one night at a time, booking the next night's stay before check-out time;
>
> b.  Defendant(s) directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;
>
> d.  Defendant(s) were directly renting rooms to the same trafficker(s) – Plaintiff's trafficker(s);
>
> e.  Defendant(s) had commercial dealings with Plaintiff's trafficker(s) and then continued to rent rooms to Plaintiff's trafficker(s).
>
> f.  Defendant(s) had a continuous business relationship with Plaintiff's trafficker(s) such that Defendant(s) established a pattern of conduct with those trafficker(s).
>
> g.  After renting the room for the first night, Plaintiff's trafficker(s) had prior commercial dealings with Defendant(s) and then reinstated those dealings.
>
> h.  Defendant(s) associated with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve Defendant(s)' business objectives.
>
> i.  Defendant(s) owned, operated, and maintained the hotel in question.
>
> j.  Defendant continued to take money from Cole, aid Cole by providing him with the venue for the sex trafficking acts to

occur, aid Cole by providing him with WIFI service to advertise D.B., aid Cole by providing parking to the Johns, and aid Cole by provide security to limit the violence and robberies that might otherwise result from the brazen sex trafficking operation that was taking place. *See* ¶¶ 26-33, *supra.*

37.    Plaintiff's trafficker's undertaking with Defendant(s) violated the TVPRA with respect to Plaintiff because:

a.    Cole recruited D.B. to participate in commercial sex acts at Defendant(s)' hotel by, among other reasons, stating that he would take care of her and then making her work as a prostitute;

b.    Cole harbored D.B. at Defendant(s)' hotel for the purpose of D.B. participating in commercial sex acts at the property;

c.    Cole transported D.B. to Defendant(s)' hotel for the purpose of D.B. participating in commercial sex acts at the hotel;

d.    Cole maintained D.B. at Defendant(s)' hotel for the purpose of D.B. participating in commercial sex acts at the hotel;

e.    The commercial sex acts occurred at Defendant(s)' hotel in rooms rented by Cole;

f.    Cole used force, threats of force, fraud, and coercion to cause D.B. to participate in commercial sex acts at Defendant(s)' hotel;

g.    Cole threatened D.B. with violence and used this tactic to cause D.B. to engage in commercial sex acts at Defendant(s)' hotel;

h.    Cole de-frauded D.B. by falsely telling her that he would take care of her, and then forcing her to work as a prostitute for him at Defendant(s)' hotel;

i.    Cole coerced D.B. to participate in commercial sex acts at Defendant's property by threatening D.B. with physical harm if

she did not continue to engage in commercial sex acts at Defendant(s)' hotel;

j.   Cole knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited D.B. to engage in commercial sex acts in the hotel rooms that Cole rented from Defendant(s);

k.   Buyers came to Defendant(s)' hotel, purchased the "right" to have sex with D.B. from Cole, and then the buyers raped D.B. in Defendant(s)' hotel;

l.   Cole was aware that D.B. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendant(s)' hotel;

m.   Cole utilized Defendant(s)' wireless internet connection to post advertisements of D.B. for the commercial sex acts; and

n.   Other actions to be proven at trial.

38.   The venture in which Defendant(s) participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling D.B. in commercial sex acts, the use of the internet to post sex advertisements, the use of interstate highways to transport D.B. to the hotels by her trafficker(s) (and her associates), and other reasons to be proven at trial.

39.   Defendant(s) had actual or constructive knowledge that the undertaking violated the TVPRA, i.e., Defendant(s) had actual or constructive knowledge that

D.B. was being trafficked for sex. *See* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, *LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

40.    Defendant(s) directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant(s) specific and direct knowledge of sex trafficking, including the sex trafficking that victimized D.B., and other crimes at the hotel during the relevant period.

41.    D.B.'s victimization followed a pattern that was readily observable and was obvious to Defendant(s)' employees.

42.    Defendant(s) knew that there was training available to help them root out any sex trafficking at their hotel but instead decided to become complicit in that trafficking.  The training includes but is not limited to:

a.    the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000.

b.    the implementation of the Tourism Child Protection Code of Conduct (the "Code") by End Child Prostitution and Trafficking (ECPAT-USA) which outlines well-established best practices for the hospitality industry to combat sex trafficking, and identifies six simple steps hotels can take to prevent child sex trafficking.

c.   extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking

d.   extensive federal / state / local government testimony and press quotations informing the public that low income motels were a particular hotbed of sex trafficking, and

e.   the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

43.   Defendant(s) had actual knowledge of the publicly available online reviews from Google, My Business, Priceline, Trip Advisor, etc. in which customers reported allegations of prostitution, sex trafficking, and other illicit activities occurred at the Hotel and those reviews combined with other allegations contained herein gave Defendant constructive knowledge of Plaintiff's trafficking (showing defendant "should have known") that Plaintiff was being trafficked.  Those reviews include that:

a)  There are **hookers** drug dealers criminals. . .

b)  . . .nothing but drug dealers and transgender **prostitutes** walk around this place

c)  . . .The sink had various burn marks on them indicative of illicit drug use and the **prostitutes** wandering nearby confirmed my suspicions. . .

d)  . . .there are trannys and **prostitutes** who literally stand outside with their hotel room doors open giving their customers directions. . .

16

e) . . .very ghetto. People were outside fighting everyday, **prostitutes**. . .I found drug wrapping in my front door. . .

f) **Prostitutes** working with cops. . .that is all

g) Transsexuals walking around proposition people for **sex dates**. . .

44. Upon information and belief, Defendant(s) had actual or constructive knowledge of law enforcement activity reporting widespread prostitution, sex trafficking, and other illicit activities occurring at Defendant's hotel which when combined with the other factual allegations listed herein likewise gave Defendant constructive knowledge (Defendant "knew or should have known") that Plaintiff was being trafficked.

45. Upon information and belief, based on the numerous arrests, investigations, and police reports, Defendant(s) knew or should have known of the sex trafficking and prostitution ventures operating out of its hotel prior to Plaintiff's sex trafficking which when combined with the other factual allegations listed herein likewise gave Defendant constructive knowledge (Defendant "knew or should have known") that Plaintiff was being trafficked.

## COUNT 2:  STATE LAW RICO CLAIMS

46. Defendant(s) violated Georgia's Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") when it acquired and maintained, directly and

indirectly, an interest in money through a pattern of racketeering activity at the hotel. O.C.G.A. § 16-14-4(a)

47.    Defendant(s) also violated Georgia RICO when it conspired and endeavored to acquire and maintain, directly and indirectly, an interest in money through a pattern of racketeering activity at the hotel. O.C.G.A. § 16-14-4(c).

48.    Defendant(s) knowingly and willfully joined a conspiracy at the hotel, which contained a common plan or purpose to commit two or more acts of racketeering activity, through which an interest in and control of money would be acquired and maintained, either directly or indirectly from the hotel.

49.    Defendant(s)'s acts of racketeering had the same or similar accomplices, including, but not limited to the sex traffickers and buyers. Defendant, as a party to the crime, and as co-conspirators, while having and exercising control over the use of the hotel, devised an unlawful scheme designed to maximize profits to the detriment of guests and invitees —no matter the means or the cost.

50.    Defendant(s) engaged in more than two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions by keeping a place of prostitution and by pimping in violation of Georgia law. O.C.G.A. §16-14-3(5)(A)(vii) (both keeping a place of prostitution and pimping are predicate acts

under Georgia RICO); *see also* O.C.G.A. § 16-6-10 (keeping a place of prostitution); O.C.G.A. § 16-6-11(5) (pimping).

51.     While sex trafficked out of Defendant(s)' hotel, countless men paid money to have sex with D.B. in the hotel rooms Defendant(s) rented to D.B.'s trafficker(s) and associates.

52.     Defendant(s) kept a place of prostitution by receiving money and by acting individually, as parties to the crime, and as co-conspirators, while having and exercising control over the hotel, which offered seclusion or shelter for the practice of prostitution, knowingly granting and permitting the use of that location for the purpose of prostitution, in violation of O.C.G.A. § 16-6-10. This constitutes racketeering activity. O.C.G.A. § 16-14- 3(5)(A)(vii).

53.     Defendant(s) was also "pimping" by receiving proceeds and profits derived from prostitution and aiding and abetting the trafficker(s) in the commission of the plan to force others into commercial sex acts.

54.     While Defendant(s) had control over the use the hotel, which offered seclusion or shelter for the practice of prostitution, it knowingly granted and permitted its use for the purpose of prostitution.  Because Defendant's directors, managerial officials, and others in the position of powers knew of the activity stated herein, and still provided the hotel for sex trafficking purposes, those directors,

managerial officers, and others in the position of power were complicit and furthered the prostitution and sex trafficking.

55.    Defendant(s) engaged in more than two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions.

56.    The acts of racketeering activity were interrelated by distinguishing characteristics and were not isolated incidents.

57.    Defendant(s)'s acts of racketeering had the same or similar intents, including but not limited to obtaining money, directly or indirectly, through a pattern of racketeering activity.

58.    Defendant(s)'s acts of racketeering had the same or similar victims, including, but not limited to, Plaintiff D.B. and other victims who were engaging in sexual acts in exchange for money at the hotel.

59.    The racketeering violations committed by Defendant(s) involved transactions affecting D.B., and as a result, Plaintiff's injuries flow directly from the pattern of racketeering violations committed by Defendant(s).

60.    Upon information and belief, management level employees were involved and participated in the racketeering violations.

## COUNT 3:  PREMIES CLAIM

61.    At all relevant times, Defendant(s) owed a duty to invitees of the hotel,

including D.B., to exercise ordinary care in keeping the premises and approaches of the hotel safe. *See* O.C.G.A. § 51-3-1.

62.    At all relevant times, Defendant(s) had a duty NOT to aid in the creation of, and NOT to maintain, a continuous and regularly repeated dangerous criminal condition at its property. *See* O.C.G.A. § 44-1-4.

63.    Defendant(s) had actual and constructive knowledge of criminal activity at the premises that made the repeated rapes of D.B. foreseeable to Defendant(s).

64.    Defendant(s) knew or should have known the steps to take to prevent the hotel from being used as a venue for sex trafficking, including D.B.'s minor sex trafficking, but negligently failed to remedy, prevent or report the sex trafficking.

65.    Defendant(s) was negligent and said negligence proximately caused Plaintiff D.B.'s injuries in the following ways:

      a.    Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care  to keep the premises safe;

      b.    Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a  nuisance;

      c.    Negligently failing to provide appropriate and effective security personnel during D.B.'s minor sex trafficking at the hotel;

      d.    Negligently failing to properly inspect and maintain the premises;

e.  Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

f.  Negligently failing to properly retain, hire, train, and supervise said employees;

g.  Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

h.  Negligently failing to respond to online reviews and publicly available information;

i.  Negligently failing to prevent loitering, pandering, prostitution and trespassing;

j.  Negligently failing to remove loiterers, panderers, prostitutes, pimps and trespassers;

k.  Negligently failing to inspect, patrol, or appropriately monitor the property;

l.  Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

m.  Negligently failing to remediate a long history of crime at the Hotel and the area nearby;

n.  Negligently failing to warn invitees of known hazards at the property;

o.  Negligently representing to invitees that the property was safe; and

p.  Other negligent acts that violated Georgia common law to be proved at trial.

22

66.     Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Defendant(s) and one or more or all above stated acts was the proximate causes of the injuries sustained by D.B.

67.     Defendant(s) is liable for the minor sex trafficking of Plaintiff D.B.

### COUNT 4:  PRIVATE NUISANCE CLAIM

68.     At all relevant times, Defendant(s) had a duty NOT to aid in the creation of, and NOT to maintain, a continuous and regularly repeated dangerous criminal condition at its property. *See* O.C.G.A. § 44-1-4.

69.     Defendant created and maintained a dangerous criminal condition of sex solicitation, pimping, sex trafficking, and prostitution at the Travelodge in the following ways:

 a. Violating O.G.C.A. § 41-1-1 by creating and maintaining a nuisance;

 b. Failing to require its employees to undergo formal training to prevent sex trafficking and dangerous crime before working at the hotel;

 c. Failing to properly retain, hire, train, terminate, and supervise said employees;

 d. Failing to require employees to undergo criminal background screening;

e.   Failing to implement and enforce proper business systems, policies, and procedures to prevent sex trafficking and dangerous crime;

f.   Failing to provide appropriate and effective security personnel during D.B.'s minor sex trafficking at the hotel;

g.   Failing to ensure security recommendations and procedures were adequately followed and implemented;

h.   Failing to inspect and maintain the premises properly;

i.   Failing to respond to online reviews and publicly available information;

j.   Failing to prevent loitering, pandering, prostitution, and trespassing;

k.   Failing to remove loiterers, panderers, prostitutes, pimps, and trespassers;

l.   Failing to inspect, patrol, or appropriately monitor the property;

m.   Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

n.   Failing to remediate a long history of crime at the Hotel and the area nearby;

o.   Directing suspected criminals to the rear of the Hotel;

p.   Failing to warn invitees of a known dangerous criminal condition at the Hotel;

q.   Representing to invitees that the property was safe; and

r.    Other negligent acts and omissions that violated Georgia common law to be proved at trial.

70.    Upon information and belief, Defendant knew or should have known that a minor sex trafficking victim was rescued from the Travelodge prior to Coles trafficking D.B. as a minor for sex at the Travelodge.

71.    According to sworn testimony, the Travelodge manager knew, but did not terminate a Ramkabir employee accused of molesting a minor at the Travelodge prior to Coles trafficking D.B. for sex at the Travelodge.

72.    Despite the inadequate training, screening, retention, policies, and procedures Ramkibar employees were allowed to work at the Travelodge and failed to timely remedy the dangerous criminal condition before Coles trafficked D.B. for sex at the Travelodge.

73.    The dangerous criminal condition, created by Defendant's inadequate training, screening, retention, policies, procedures, warnings, and control of the property continued for such a length of time that it constituted an ongoing and continuing, nuisance, to D.B. and other minor sex trafficking victims at the Travelodge.

74.    Defendant was aware of a history of sexual solicitation, prostitution, human trafficking, and pimping at the Travelodge before Coles trafficked D.B. at

Defendant's hotel but failed to correct or address this nuisance within a reasonable time.

75.     Defendant was aware of a history of customer complaints about the dangerous criminal condition at the hotel and failed to correct or address the nuisance at the hotel.

76.     Defendant knew, or in the exercise of ordinary and reasonable care, should have known of the existence of the dangerous criminal condition at the Travelodge and negligently allowed that nuisance to continue.

77.     Defendant's failure to correct or abate the nuisance, created and maintained by the inadequate training, screening retention, policies, procedures, warnings, and control of the property was the proximate cause of the injuries to Plaintiff.

78.     Defendant is liable to Plaintiff, pursuant to O.G.C.A. § 41-1-4 for the injuries that Plaintiff sustained, resulting from Defendant's allowing a continuing nuisance including solicitation, pimping, prostitution, and failing to correct said nuisance at its hotel.

### PROXIMATE CAUSE AND DAMAGES

79.     D.B.'s sex trafficking and victimization at the hotel was a foreseeable and preventable result of Defendant(s) actions and inactions including failing to

implement reasonable, appropriate, and adequate measures to deter sex trafficking at its hotel and failing to prevent D.B.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

80.     As a direct and proximate result of Defendant(s)' actions, D.B. suffered substantial physical, emotional, and psychological harm and other damages.

81.     Defendant(s) are jointly and severally liable with each other and the trafficker and any other non-party actors who participated in the trafficking for the indivisible injuries that were proximately caused to D.B.

82.     Defendant(s) are liable for D.B.'s damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under the TVPRA and other federal law. *See* 18 U.S.C. § 1595(a) (a victim "may recover damages and reasonable attorneys fees"); *see also Barry v. Edmunds*, 116 U.S. 550, 562 (1886) ("it is a well-established principle of the common law. . .that a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant. . ."); 18 U.S.C. § 2255(a) (minor victim may recover "actual damages. . .reasonable attorney's fees. . .[and] punitive damages. . .")

83.     Plaintiff D.B. brings each and every claim for damages permissible under the law against Defendant(s) for injuries suffered in the incidents at issue, and to recover for all special damages, economic losses, medical expenses, necessary

expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a.    Personal injuries;

    b.    Past, present and future pain and suffering;

    c.    Disability;

    d.    Disfigurement;

    e.    Mental anguish;

    f.    Loss of the capacity for the enjoyment of life;

    g.    Loss of earning capacity;

    h.    Lost wages;

    i.    Diminished capacity to labor;

    j.    Incidental expenses;

    k.    Past, present and future medical expenses;

    l.    Permanent injuries;

    m.    Attorney's fees;

    n.    Punitive damages; and

    o.    Consequential damages to be proven at trial.

84. Punitive damages should be imposed upon Defendant(s) without limitation or cap for its actions which are explained more fully above.

85.     Defendant(s) is also liable for paying Plaintiff's attorneys' fees and litigation expenses pursuant to the TVPRA.

86.     Defendant(s) are also liable for treble damages under Georgia RICO laws.

87.     Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant(s), and one or more or all of the above stated acts were the proximate cause of the injuries and damages sustained by the Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against the Defendant and for the following:

1)     That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2)     Plaintiff be awarded actual damages in amounts to be shown at trial;

3)     Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from each Defendant;

4)     Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6)     Punitive damages be imposed upon each Defendant;

7)     Treble damages be imposed upon each Defendant;

8)     Plaintiff be provided with a trial by jury; and

9)    Plaintiff has such other relief as this Court deems just and appropriate under the circumstances.

This 20th day of December, 2023.

/s/ Matthew B. Stoddard
Matthew B. Stoddard
Ga. Bar No.: 558215
M. Janine Bell
Ga. Bar No.: 538932
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
janine@legalhelpga.com

## CERTIFICATE OF COMPLIANCE & SERVICE

This is to certify that the foregoing document has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the pleading was prepared using Times New Roman font, point 14. I further certify that I have served a true and correct copy of the foregoing upon all counsel of record using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

**Counsel for Defendant Ramkabir
Investment Groups, Inc. d/b/a
Travelodge by Wyndham**
Kevin M. O'Brien
Nicholson Law Group
Radnor Financial Center
150 N Radnor Chester Road, Ste. E150
Radnor, PA 19087
obrien@nicolsonlawgroup.com

Thomas S. Hiley
Nicolson Law Group
3824 Land O Lakes Drive NE
Atlanta, GA 30342
hiley@nicolsonlawgroup.com

This 20th day of December, 2023.

/s/ Matthew B. Stoddard
Matthew B. Stoddard